Good afternoon, ladies and gentlemen. Our case for this afternoon is O. B. v. Felicia Norwood, and we are ready to hear from counsel. This, probably mispronounced, is Bochy Ansah. Is that close? May it please the Court. I am Assistant Attorney General Linda Bochy Ansah, on behalf of the Director of the Illinois Department of Health Care and Family Services. The District Court's preliminary injunction order rested on an erroneous view of the law and a clearly erroneous assessment of the evidence. The District Court erred in accepting plaintiffs' argument that the early and periodic screening, diagnostic and treatment provisions, as well as the reasonable promptness provisions of the Medicaid Act, limit the Director to providing only one form of corrective treatment. The District Court accepted that these provisions of the Act require the Director to ensure that nurses will provide medical care to plaintiffs in their home. The EPSDT and reasonable promptness provisions do not impose that requirement on the Director. Instead, the statute requires that plaintiffs receive corrective treatment and necessary health care, not necessarily in-home shift nursing services. But the Director did determine that in-home shift nursing services were needed for these children and they were eligible for them. The Director determined that they were eligible for them and that they were needed. But not that they were the only form of corrective treatment that could be provided. Now, I have one big question for you that really comes up from reading all of these briefs. As I read through the transcripts from the District Court, it seemed to me that the District Court judge was repeatedly asking Mr. Houston, who at that point was representing the state, whether there was any need for evidentiary hearings, whether there were facts that needed to be developed. And he repeatedly said no. This was just a pure legal issue. What does the statute mean? But then, as I read through what you now have, it seems that lots of facts are being smuggled in through the back door. And it seems to me, if you've represented to the District Judge, that there's no need for evidence about, for example, how many nurses would be available through other services or what's the average rate of pay for nurses in these various markets in the state. I don't have any trouble coming up with a lot of facts that might be pertinent, but it seems to me that you can't really tell the District Judge that there are no facts and then turn around on appeal and say, oh, but we have all these facts. Your Honor, so Counsel Bellow did, when asked specifically at one of the hearings, Counsel said that in response to one of the District Court's questions, he said once that it is more of a legal issue in the sense that our view of plaintiff's complaint was that they were essentially trying to force the director to raise her reimbursement rates. And so in response to a specific question, he did say that it was more of a legal issue. But these facts are not being smuggled in. They're evident from plaintiff's complaint. Well, not all of them. And this is very relevant to most of the issues that are here. And maybe Mr. Houston used those words once, but that was not the only time the District Court asked the question, do I need to set time for an evidentiary hearing? And the State said no. Now, as far as, you know, this legal issue is concerned, it seems to me that maybe one of the primary points your opponents are making is that the statute itself was amended by the Affordable Care Act to get beyond simple financial reimbursement and to require the actual treatment be delivered. This definition of medical assistance got changed in 1396D subpart A. So maybe you could talk about that a little bit. Sure. Your Honor, the definition of medical assistance did get changed, but the first way that medical assistance can be provided is through payment of the following care and services. So that remains the same. Payment of care and services is still one option for which medical assistance can be provided. But the statute, your opponents say, and then it goes on to say or the care and services themselves or both. And for different parts of the statute, different ways of providing medical assistance seem to be appropriate. So payment isn't even sensible for some of them. So I'm not sure that if your position is that the secretary or the director, sorry, the director can just pick the one she wants, I'm not sure that's consistent with the statutory language. Our position is not that the director can pick what position she wants. It's that the statute uses the word or, which indicates that there's an alternative. But in this case, as we've noted, you know, the director has not just paid for provision of the goods and services, but she's actually arranged for the corrective treatment. So whether it's just payment or it includes provision of the goods and services, the director has complied with the statute and has provided medical assistance. What does the record show about why these services are not currently being provided? The record shows that nursing agencies have had difficulty finding enough nurses to provide the care. You think that's affirmatively shown by the record rather than just a litigating position? I think that's demonstrated by plaintiffs in their complaint. Plaintiffs say the nursing agencies that the director has worked with have had difficulty finding nurses. That's a point that was raised at one of the hearings in front of the district court. So I think there is support for that position. That's one of those facts that I was concerned about. It seems to me that's a fact that could be researched. You know, you could find out how many nurses with the qualifications to work with this very challenging population are out there. There's the one relationship, I suppose, the director has with the University of Illinois at Chicago. But, I mean, Illinois is a big state. Maybe there are places in St. Louis that would be providing services further south or other things. But we just have this factual void here. We do, Your Honor, but, again, plaintiffs are the one who sought the preliminary injunction. And so the burden of persuasion was on them, and it was their burden to present evidence. Right. And so they did in terms of their own affidavits about their own experience, and they said we're not getting the hours of coverage that we need. I have to say I'm very curious about one aspect of the secretary's response. Sorry, I keep wanting to call her the secretary, but the director's response. You seem to be saying that, as is the case with OB, I think, that institutionalized care is the option the director is prepared to offer if there is no in-home service. Is that correct? Well, what we're saying is that the director's approved OB for in-home nursing care. The director is working with the nursing agencies in his area to see that he gets that in-home nursing care. But to the extent that there are not nurses available to care for him, that he can be cared for at a hospital. At least three times the monthly cost, if I'm remembering the numbers correctly. That may be the case, Your Honor, but, again. No, it's way more than that. I'm sorry, isn't it? What's the monthly cost of keeping him in the hospital? I think plaintiffs allege it's $78,000 or something to that effect. Right, and the monthly cost is just short of $20,000 if he were at home. Is it the director's position that there are enough beds in these nursing home-like facilities and hospitals to take care of every child? Well, with respect to OB, the fact that it may be more cost-effective for him to be cared for in-home doesn't affect whether there are nurses who can actually provide the care. And so, again, I think it's everyone's preference for nurses to be willing and available to provide that care. But if they're not, then there are other options. But all the district judge ordered was taking steps to arrange directly or through referral for corrective treatment. And he didn't say you had to achieve some particular level of compliance with his suggestion, right? Right. Just to take steps. So what is the objection to being told to take these steps? It's very unclear what those steps would look like, and the district court didn't acknowledge. Why is that? Steps to arrange directly or through referral, et cetera? What's ambiguous about that? Could I modify that a little? The order says take steps. You asked for a stay.  So, concretely, what steps have you taken? The department is looking into- No, no, no, no, no. Looking into is not a step. What steps have you taken to comply with the injunction? They're recruiting more nurses to be able to provide this care. Plaintiff OB was released from the hospital and is now receiving care in-home for some of the hours that he has been approved for. So a nurse was found for OB? Yes. A nurse was found for OB. And you're doing more recruiting? Yes. What does that mean concretely? So the Division of Specialized Care for Children is the one that works with the nursing agencies to attempt to find more nurses who are available to care for the plaintiffs. In terms of what specific steps they're taking, I'm not sure. But that's something that the division is sort of responsible for. If you think that your organization is complying with Judge Koukouros' order, why not ask him to modify his injunction or dissolve it on the theory that you're complying because all he asked was that you take steps and you've taken steps? Well, we can ask for the injunction order to be dissolved. I mean, that's one possibility. But what we're seeking from this court is to vacate and reverse the injunction order itself because plaintiffs never showed that there actually was a violation of the Medicaid Act before receiving the injunction order. And as this court and the Supreme Court has noted, a preliminary injunction is extraordinary relief and the plaintiffs have to make a clear showing of entitlement to it before receiving one. Except I don't think you're stating the full test. A preliminary injunction, of course, is equitable relief, and thus you have no remedy at law. But on the other hand, whether to issue a preliminary injunction lies very much in the discretion of the district court. Likelihood of success on the merits is certainly an important factor, but it's not the only thing. And so it's really a misstatement to say that the plaintiffs have to prove once and for all that their interpretation of the Medicaid Act is the correct one. They have suggested how they would read this definition of medical assistance that we were talking about a minute ago and what it means for the director in this particular part of the statute, which is not the whole statute, it's just this part, this EPSDT, unfortunately not a pronounceable acronym, is the unusual one where the state actually has the obligation to provide treatment, early and periodic screening, diagnostic and treatment. That is the T part. So I'm not sure that the plaintiffs have done such a bad job on that part, but it's all preliminary. It's still to be determined. Well, plaintiffs haven't actually, they've made a lot of allegations, but they haven't presented any evidence that there is something that the director should be doing that she's not doing. All plaintiffs have done is say that. I think you'll find that we'll be asking the plaintiffs whether they think there is something concrete that they think the director should be doing and isn't. Right. And I take it in this status update letter the director said, identified a number of things for addressing this disparity between what's been approved and what's actually been delivered, including using more nursing agencies. I think some of them have been named, using certified nurse assistants when the parents are at home, increasing the PRN coverage, and so on and so forth. There's a list of quite specific things that the director has managed to come up with in the light of this litigation. So doesn't that suggest that there's a menu out there? Well, we've raised those as options, but Your Honor was asking earlier about what's the harm in letting the injunction order as it stands remain, and the harm is that it's not clear whether any of these options that we've proposed will be satisfactory to the district court. I mean, so far they've moved for enforcement of the preliminary injunction order, and it was denied in part, but so far it's not clear that moving forward the steps that the director has identified will be seen as good enough. But that might just be a matter of the wording of the injunction. I mean, the district court is between a rock and a hard place, because I assure you that you would be here complaining that the state's been micromanaged if the district court spelled out what you were supposed to do at 9 o'clock in the morning, what you were supposed to do at 10.30 that same day, and on and on. So you would be saying, wait a minute, the state needs some discretion to decide how to implement this program. Now you're on the other side, you're saying, well, you've given us too much discretion. But the judge was requiring these reports and other kinds of interactive process, I think, with that in mind. Well, the state would complain if it were, in fact, micromanaging, but there has to be some more. Federal Rule of Civil Procedure 65D says it has to describe in reasonable detail what steps are required or restrained. And simply saying, take unspecified affirmative steps is not enough. To provide for the in-home shift nursing services that you have already approved. So two narrowing phrases right there. As required by the Medicaid Act. I could delete that, I'm not sure that means anything. But in-home shift nursing services already approved by the director. Right, but again, arrange for in-home shift nursing services. That phrase sort of obscures the fact that nurses have to be available and willing to work the hours that the department has approved. And there are many reasons that are... But you're not unclear about what that means. It means you have to find nurses. Now maybe if you come back and tell the court it's impossible, there just aren't enough nurses in the state of Illinois, plus surrounding areas. The court would be required to modify the injunction. But I think the thread that there are not enough nurses to care for plaintiffs has always been underlying in these proceedings. The district court certainly did not make, as a finding of fact, that there were not enough nurses. If it were established that there weren't enough nurses, we'd be in a terrible fix where the injunction is effectively saying, take a nurse away from somebody else who now needs nursing services and give it to these plaintiffs. Might be very hard to see how that would be in the public interest because it would now leave somebody else who needed a nurse without necessary care. Might even make things worse. But I can't read the district court's opinion as containing a finding that what I'm requiring is taking nurses away from somebody else who needs them and giving them to these plaintiffs who need them. It doesn't seem like that's what the district court thought he was doing. No, and we're not suggesting that the district court is saying take nurses from someone else. If there is a shortage of nurses, the only way to provide more nursing services for the plaintiff class is to provide less nursing services for somebody else. We're playing a zero-sum game if there are not enough people to provide the nursing services. And one would then ask, why should the district court be preferring these people over other people? But if you're saying we're not playing a zero-sum game, if it is possible to find the nurses without taking them away from somebody else, then I don't know what you mean by shortage of nurses. Well, in terms of the only option being take away from someone else, you know, an option that the director had done before this litigation, based on a report that plaintiffs introduced, was to try and recruit additional nurses to provide care for plaintiffs. So it's not the case that it necessarily has to be taking nurses away from someone else, but ultimately... Is the idea that there are a number of nurses just twiddling their thumbs and not working? No, I wouldn't suggest that's the idea at all. Or that they're not fully employed, they're working 20 hours a week rather than 40? There are a number of... I just don't see how you can say on the one hand there's a shortage of nurses, and on the other hand, that more services can go to the plaintiff class without there being less services for others. Your Honor... That's just what a shortage means. Yes, a shortage does mean that there's not enough currently, but I mean, presumably more nurses can go to nursing school, you know, and if those nurses become available... If somebody says there's a shortage of bread, it means that some people aren't getting the bread they need for nutrition. If you're using shortage of nurses in some bureaucratic, shorthanded way, I'm afraid I don't understand what you're meaning. All I'm trying to say is that the Director has attempted to arrange for plaintiffs to receive in-home shift nursing services. To the extent that they are not receiving in-home shift nursing services, there are other options available to plaintiffs to receive corrective treatment. Unless this Court has further questions... You can save your last minute, that's fine. Ms. Perkins. Thank you. May it please the Court, my name is Jane Perkins. I'm one of the attorneys for the plaintiff appellees, the children in this case. The District Court properly concluded that the plaintiffs had firmly established the likelihood to succeed on the merits of their Medicaid claims, that the Director is failing to arrange for in-home skilled nursing services that the treating physicians and the Director... Counsel, let me begin with a concrete question that Judge Posner and I both asked in different ways, which is, the State has told us what it's doing to comply with the injunction, and then the question for you is, do you believe that that complies with the injunction? No, Your Honor, because the State... What I just heard counsel for the State say is that there are options out there that the State could do, but... Well, the injunction says immediate and affirmative steps, and the State says it's taken one immediate step of getting a nurse for OB, and it's trying to recruit others. To be concrete, what other immediate and affirmative step do you believe the State can take and hasn't taken? I think that the steps that are listed in the Department's May 6th letter, those six options that Judge Wood referred to are options for the State here in the interpretive guidance that the Centers for Medicaid... I thought that was a list of things they were doing or trying to do. I'm trying to figure out what you think they should do but aren't doing. They're not doing those yet, are they? They just said they were possibilities. So you think they should transform it from the possible to the real. In addition, the interpretive guidance issued by the Centers for Medicare and Medicaid Services lists at least five options that States can take, including... Your Honor referred to St. Louis entering into border agreements with providers who are in other states who can serve children in border areas. In the Stanton v. Bond opinion from this circuit, the court said that an option is to engage in aggressive monitoring to see how the recruiting is going and to fine-tune the system as it goes along. So what's happening to these children? I want to come back to the financial point because it would seem to be financial suicide for the State to put all of the children who are qualified for this care in an institutional setting as opposed to having them at home. Is what's really happening is that they're at home but they just aren't getting care and so unskilled care from parents and family members is what's filling in the blank? That's correct. Then some children do deteriorate to the point where they need acute inpatient care and then they go into the hospital to get the care there. And that's not disputed. Okay, so you're saying there's a concrete list of things that the Center for Medicaid CMS has and there are also the six bullet points that were in the letter where the director says, well, here are some possibilities to address this disparity. Do you think the injunction should have listed all of those steps? No, Your Honor. The injunction was properly fashioned to give the director, the department, the ability to, at the outset, make the decision about what steps to take. And that was appropriate to really honor the federalism issues that are in play here. This is a state agency and it also is an agency with expertise. So it made complete sense for at this juncture in the case, at the preliminary injunction phase, for the court to say, look, I have found that you are not, I have found that the plaintiffs have established the standards for getting a preliminary injunction. The idea of delegating to an agent and then sitting back and waiting to pay claims, whatever they may be for, is not, I'm finding the plaintiffs are likely to succeed on their claim that that is not what it means to arrange for services with reasonable promptness in the Medicaid statute. At that point, the court could have done nothing, but that wouldn't have been a good result because of the ongoing irreparable harm. Or the court could have issued a highly directory specified steps order that, I think as your Honor pointed out, probably would also have been complained about. So what the court did was do something in between. And that made imminent sense. It said to the state... Did Judge Koukouras draft the order or did, you know, your side? The plaintiffs drafted the order. He then asked the parties to confer. We were not able to confer. The director said that she had no comment as to the order that we had submitted. Judge Koukouras entered an order quite similar to the one that we had proposed, but not exactly like the one we had proposed. It's not really very well written. It says... I mean, it's not obvious what affirmative is doing there. But also in the third line, corrective treatment of in-home shift nursing services. What does that mean? Corrective treatment of services? You're treating people. You're not treating the services that they're being provided as treatment. You mean in the form of in-home shift nursing services. You're not correcting the nursing services. You're correcting or addressing the problems that the children have. So the type of corrective treatment you want is in-home shift nursing services. We're not going to make this an English class, but those are the services. Did you ask the parties to come back periodically and report compliance with the order? Yes, in fact, a report was due yesterday by the director to inform the court and the plaintiffs about steps taken, and we did not get a report. Yes, the state should send that to the Court of Appeals, too, because it's here. It's related to questions asked of you at oral argument. Counsel, Ms. Perkins, let me ask you a variant of this shortage question. Just indulge me on a hypothetical. Suppose there are only two nurses in Illinois and that there are three Medicaid patients total, and each one requires a nurse's full-time services. What would happen, I assume, is that two of them would get full-time nursing services and one of them would not. Would it be proper for a district court to order the state to transfer one of those nurses from somebody else to the plaintiff? No, Your Honor. Because that would injure the person who was now losing services. Correct. So if there is a shortage of nurses, how can the plaintiff class be helped without injuring other people who need nursing care? There's no evidence that there is a shortage of nurses. All right. More and more it looks like the question, we need to know. The district judge needs to know. There are no findings by the district judge about whether there is or isn't. The plaintiff's evidence was, and the director did not dispute that, the problem was getting nurses who will participate in Medicaid. The problem is not licensed nurses. That sounds like a different problem. It sounds like the problem is Medicaid might not be offering rates that are high enough. They won't match the private market rates. Or perhaps the problem in Illinois is that Illinois doesn't pay the Medicaid bill for months or years after it should be paid. But that, of course, try to fix that runs smack into Armstrong, which says that the courts can't order the state to pay more money. Armstrong says that the courts can't order the state to pay more money under 30A. We did not bring a case asking the state to pay more money under 42 U.S.C. section 1396AA30A, which is the payment provision at issue in Armstrong. Let me be clear. Are you now saying that you think that in order to comply with the injunction, the state must raise the reimbursement rates? No, Your Honor. We're saying that the state needs to, at this juncture of the case, take reasonable steps, affirmative steps. Can I just say what I thought you were saying, in order to avoid the Armstrong problem, which is looming out there on the sides, is that the state has thus far not exhausted what I'll call the non-Armstrong remedies. It hasn't looked around enough. It's been content to rely on this one relationship with UIC that, for all we know, there are many more things, you know, rocks to be turned over or whatever. There are many more steps that they could take before we would even know if we had an Armstrong problem. If we at the end of the road have an Armstrong problem, then we have an Armstrong problem. We'll just deal with that. But these items in the list that the director filed don't seem to be just a raise the rate sort of thing. It's a use more agencies, find less skilled people who can work when the parents aren't there, expand some agencies to other geographic locations. These are all unexhausted, as I understand, your position and the district court's position. Unexhausted but not rate-related measures. Absolutely, Your Honor. Why this was an issue of law at the district court level is because it is undisputed that the process that is in place here is that the director finds children have a medical necessity for in-home skilled nursing care and that that care is appropriate. Then she delegates to the University of Chicago that care coordination, and that's not working. There's a gap there. She is waiting here to pay claims when and if they are submitted. But in terms of how... So what are you proposing that she should be doing? Well, we proposed the injunction. We drafted this injunction. Aren't you proposing that she do these things in her letter? Absolutely, that she take these steps that she has set forth in the May 6th letter, that she consider the steps that CMS has suggested, that she do what Stanton v. Bond said, which is to engage in monitoring and refine the system. And I would just say, too, this isn't pie in the sky. So are you saying she's outlined a good program for dealing with the problem, but she's not implementing it? That's correct. She has outlined a number of steps that she could take, but she is not taking them. Has she given reasons for why she can't or won't implement them? Well, no, Your Honor. So you're arguing she's dragging her heels and in doing that violating the injunction. Well, that is what we argued in the motion to enforce, and we supplemented the record to have that in the record. And the district court found that in their papers the director said we are, at the outset, looking to see what children with the highest level of need, what the discrepancy is, what the delta is, as she called it. And so what the district court did is to say, well, it's been four and a half months, so I'm assuming you're well along the way in doing that deed. So report to me on September the 6th in terms of this and the other things that you have listed. And that's the report that we're all waiting for, which, as Judge Easterbrook suggested, should certainly be given to this court as well. Yes, Your Honor. So is there a reason that ‑‑ well, explain to me more why you think that the factual record, as it presently stands, what do you see as the issue of law before us? What facts are there, and do we have enough of them? Okay. So I think that the issue of law is whether the ‑‑ given the process that the director has described, whether that meets the requirements for arranging for services under the EPSDT law. With reasonable promptness. With reasonable promptness. And we've talked about what that system is. It's to find children in need services, to delegate care coordination, and then when and if claims are paid, to pay those claims. And so the legal question is, are we likely to succeed on our argument that that is not enough? And there are ‑‑ and we have argued, we argue to the district court that under the structure of the statute, that is not enough because 42 U.S.C. section 1396 AA43 envisions a screening and treatment program that is child specific and that is designed to get to each child the corrective treatment that they need, that Seventh Circuit precedent in cases like Stanton v. Bond support this broad notion of what EPSDT requires. Stanton's facts are very similar to what was happening here. The state of Indiana was giving lists of providers to families who would take those lists and then go look for providers and they couldn't find them. Here the agent of the department, the director, is giving lists of agencies and families are trying to use those lists. And what the Second Circuit said is that the mandatory duty to treat the health conditions that have been detected is clear from the EPSDT statute because otherwise conditions deteriorate and health problems become more severe. And so it found the arrange for ‑‑ at that time the arrange for requirement was in a regulation. It hadn't been moved up into the statute yet but it was worded the same way. It found the arrange for requirement had been violated. That opinion from the Seventh Circuit is very much in line with those from the 5th, the 6th, and the 9th, which all discuss this broad treatment requirement that EPSDT encompasses. And then in addition we think that we are likely to succeed on the arrange for argument because of the statements made by the Centers for Medicare and Medicaid Services in the interpretive guidance that both parties have cited. That guidance says that the role of the state is to assure that the full range of EPSDT services are available and that children have access to these services to meet the individual child's needs. The state, but Illinois has acute financial problems. Well, the ‑‑ Basically broke, actually, the state. This court in Bontrager noted that budgetary concerns and budgetary constraints are valid to consider but that they can't give a state an excuse for not complying with the federal law. Well, and also if the state is talking about putting people in almost home kids or institutions, they're actually shooting themselves in the foot if that's not a cynical response. And I think the district court noted that as well. There can't be 1,200 beds in almost home kids or its equivalents. There are 24. 24 beds, not 1,200. Correct. Which is roughly the size of your class, right? Correct. So that's the sort of framing of the arrange for argument that we made to the court and upon which the court found that we're likely to succeed. As for the reasonable promptness argument, it follows on the heels, I guess you would say, of the arrange for argument. CMS has pointed out that the affirmative obligation that the CMS, the Centers for Medicare and Medicaid Services, the federal agency that implements Medicaid, has pointed out that the arrange for requirement that is in the law is the thing that makes EPSDT different and makes care and services for children different from those for adults. And that because of 43C, the unavailability of providers does not automatically absolve the state from ensuring that services are provided in a timely manner. So those two provisions are working together, and the district court correctly concluded that the plaintiffs are likely to succeed on the merits of those claims he held over the ADA, the Americans with Disabilities Act in Section 504. So somewhere in the background of this case is the integration mandate, I assume. Yes. Yeah. Because one of our theories of liability is from the Amundsen case, which said that when one group of disabled people with disabilities is getting paid at one level and another group is getting paid at a lower level, that makes out a liability theory for a violation of what's called the methods of administration part of the Americans with Disabilities Act, and that is what's going on here. Your Honors, we ask that you affirm the district court opinion and order. Thank you. All right. Thank you. Anything further, Ms. Wachiansa? Yes, Your Honor. Your Honor, it's simply not the case that the director is essentially sitting back and waiting to pay for claims once they're submitted. As the report in the record from January of 2016 demonstrates, even before this lawsuit was brought, the director was taking steps to try and improve the staffing levels for plaintiffs. It's also not the case that every one of the 1,200 class members is not receiving 100 percent of the hour staff, and my understanding is that not every class member— Well, has there been any success? So, you know, it's more than six months, so what has been achieved? So, OB, of course, was released from the hospital, and my understanding is that JM and some of the other plaintiffs are receiving 80-some percent of the hours that were staffed. So, yes, there has been some— How many children? How many children in the class or— Have benefited? Benefited. I think there are five or six named plaintiffs, and I think that there have been changes for those plaintiffs. I don't know about the rest of the class. Well, two of the original plaintiffs' cases were dismissed because they moved to Colorado, which seems to have a more effective system. And, Your Honor, just briefly, to suggest that it's inappropriate for plaintiffs to receive care at places like Almost Home or a hospital when they need as much care as they do, I just don't see how that can be the case. There are conditions— No, don't misunderstand me. If there are only 24 beds at Almost Home, then there are only so many children that's going to help. But my point was really the financial point. To the extent the state wants to argue money, it's more expensive to put kids in a situation like Almost Home or certainly a hospital than it is to have them receiving in-home service. So whatever other argument you may have, I don't think money is the one that's going to make it for you here. Yes, but, again, if there are not nurses who can provide that care, that might be the one. I guess that was the—Judge Kocouris seems to have thought that if you doubled your efforts, you would find significantly more caretakers. And I guess that's what we're in the process of trying to find out. Now, you're arguing, aren't you, that you're complying with this order? We think we are. We think we were complying with the Medicaid Act before the injunction order was entered. And so Judge Kocouris's order essentially restates the Medicaid Act, take affirmative steps, except it includes in-home shift nursing services in particular, which we don't think the Medicaid Act requires. But, yes, we do think we're complying. Unless this Court has further questions, we ask that you reverse and vacate the district court's injunction order. All right. Thank you very much. Thanks to both sides. The case will be taken under advisement.